UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LUCAS NICOLSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Docket No. 09-cv-541-P-S |
| ) | |
| ERICA PAPPALARDO, ) | |
| ) | |
| Respondent. ) | |

**ORDER ON MOTION TO DISMISS**

Before the Court is Respondent Erica Pappalardo's Motion to Dismiss Verified Petition for Return of Child (Docket # 13).  As explained herein, the Court DENIES the Motion to Dismiss.

**I.  STANDARD OF REVIEW**

Respondent has moved to dismiss Petitioner's Verified Petition for Return of Child under Federal Rule of Civil Procedure 12(b)(1) & (6).  Pursuant to Rule 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction.  See, e.g., Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138 (1st Cir. 2004) ("Federal courts are courts of limited jurisdiction. In the absence of jurisdiction, a court is powerless to act."); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Pursuant to Rule 12(b)(6), a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering any motion under Rule 12(b), the Court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in the plaintiff's favor. However, in determining the existence of subject matter jurisdiction, the Court is not confined to the

pleadings and may consider other reliable materials in the record to the extent those materials "illuminate[], supplement[], or even contradict[] other materials in the . . . record." Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007). Ultimately, the plaintiff bears the burden of establishing the existence of subject matter jurisdiction. See Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996).

Only after the Court has determined it has jurisdiction may it turn to the question of the sufficiency of the complaint. Then, the Court must determine whether the complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Pursuant to Rule 8(a), the pleader need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).

## II. FACTUAL BACKGROUND

Petitioner Lucas Nicolson and Respondent Erica Pappalardo met in Salzburg, Germany in October 2007. In December 2007, Pappalardo moved to Australia to live with Nicolson and the two were married on August 10, 2008. After the marriage, the parties moved to Townsville, Australia where Nicolson was employed by the Australian Defense Force. Sometime thereafter, S.G.N. was born to Nicolson and Pappalardo. The family has lived continuously in Townsville since S.G.N.'s birth.

In early April 2009, Pappalardo took S.G.N. to visit Pappalardo's family in the United States. They were due to return to Australia on May 22, 2009. On May 5, 2009, Pappalardo notified Nicolson that she no longer intended to return to Australia with S.G.N.

On May 14, 2009, Pappalardo filed a Complaint for Protection from Abuse against Nicolson in Maine District Court in Portland, Maine. A Final Order for Protection was entered on September 4, 2009 awarding Pappalardo temporary custody of S.G.N. and giving Nicolson the right to contact S.G.N. via the internet and telephone.

On May 27, 2009, Nicolson filed an Application for Return with the Central Authority of Australia. Nicolson's Application was forwarded to the Central Authority for the United States. On October 22, 2009, Nicolson filed his Verified Petition for Return of Child with this Court. Pappalardo then filed the instant Motion to Dismiss.

### III. DISCUSSION

Nicolson has invoked the Court's jurisdiction pursuant to the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 et seq., which implemented The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention"). The Hague Convention, to which both Australia and the United States are signatories, was enacted in order to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention, Preamble, October 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501.

To qualify for relief under the Hague Convention, a petitioner seeking return of a child must establish by a preponderance of the evidence that the child was "wrongfully removed or retained"

within the meaning of the Convention. 42 U.S.C. § 11603(e)(1). A removal or retention is wrongful when

> (a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3. Thus, to invoke the Court's jurisdiction, a petitioner must set forth facts alleging that a wrongful removal or retention has occurred. See Toren v. Toren, 191 F.3d 23, 30 (1st Cir. 1999) (dismissing a petition for return of child for lack of jurisdiction because the petitioner had failed to allege facts showing that the child had been removed or retained).

### A. Habitual Residence

Pappalardo argues that the Court lacks jurisdiction because the Petition fails to allege facts sufficient to show that S.G.N.'s habitual residence is Australia rather than the United States.

The term "habitual residence" is not defined in the Convention. "Federal courts are agreed that 'habitual residence' must encompass some form of 'settled purpose.' This settled purpose need not be to stay in a new location forever, but the family must have a 'sufficient degree of continuity to be properly described as settled.'" Silverman v. Silverman, 338 F.3d 886, 898 (8th Cir. 2003) (quoting Feder v. Evans-Feder, 63 F.3d 217, 223 (3d Cir. 1995) (internal citation omitted)). "[A] parent cannot create a new 'habitual residence' by the wrongful removal and sequestering of a child." Diorinou v. Mezitis, 132 F. Supp. 2d 139, 143 (S.D.N.Y. 2000).

The relevant timeframe for evaluating the child's habitual residence is immediately prior to the allegedly unlawful retention. See Hague Convention, art. 3; Silverman, 338 F.3d at 897 (child's habitual residence must be judged at the time immediately prior to wrongful removal or retention).

4

In this case, the Petition alleges that Pappalardo notified Nicolson that she did not intend to return to Australia on May 5, 2009. Thus, the retention at issue occurred on May 5, 2009. See Zuker v. Andrews, 2 F. Supp. 2d 134, 140 (D. Mass. 1998) (retention occurred when custodial parent told non-custodial parent that she did not intend to return with child).

The Petition alleges that S.G.N. lived in Australia from the time of her birth until early April 2009, when she left with Pappalardo to travel to the United States for a temporary visit with Pappalardo's family. Prior to April 2009, she was "fully involved with all aspects of daily family life and cultural life in Australia." (Petition ¶ 9.) After unsuccessfully attempting to persuade Pappalardo to voluntarily return with S.G.N., Nicolson initiated proceedings to obtain S.G.N.'s return on May 27, 2009. Nothing in the Petition suggests that Nicolson agreed to allow S.G.N. to permanently relocate to the United States.

Taking the facts alleged in the Petition as true, as the Court must do on the instant Motion, there was no "settled purpose" between Nicolson and Pappalardo to shift S.G.N.'s habitual residence from Australia to the United States. The Petition alleges adequate facts to establish Australia as S.G.N.'s habitual residence immediately prior to the retention.

### B. Custody Rights

Pappalardo argues that Nicolson's Petition should be dismissed because he does not have custody rights with respect to S.G.N. Pappalardo claims that Nicolson relinquished his custody rights when he voluntarily agreed to the Final Order of Protection imposed by the Maine District Court, which allows him contact with S.G.N. only via the internet and telephone.

As with habitual residence, a petitioner's custody rights are to be measured at the time immediately prior to the removal or retention. Hague Convention, art. 3. The retention occurred on

May 5, 2009. The Final Order of Protection was entered on September 4, 2009. Thus, for purposes of the instant Motion, the Final Order of Protection has no bearing on Nicolson's custody rights.

Under Australian law, in the absence of any orders of court, each parent of a child has custody rights to that child. See Sealed Appellant v. Sealed Appellee, 394 F.3d 338, 343 (5th Cir. 2004) (citing Family Law Act, 1975, § 111B(4)(a) (Austl.)). "Thus, each parent is a joint guardian and joint custodian of the child, and guardianship and custody rights involve essentially the right to have and make decisions concerning daily care and control of the child." Id. (citing Family Law Act at §§ 63(E)(1)-(2), (F)(1)). The Petition alleges that Nicolson was exercising his parental rights until Pappalardo and S.G.N. left Australia. Accordingly, the Petition alleges adequate facts to establish that Nicolson had custody rights to S.G.N. at the time of the retention and that he was exercising those rights.

### C. Consent and Acquiescence

Pappalardo also argues in favor of dismissal on the grounds that Nicolson consented to or acquiesced in the removal and retention of S.G.N. Initially, the Court notes that consent and acquiescence are not part of the prima facie wrongful retention claim but are narrow exceptions that allow a Court the discretion not to return the child to the country of habitual residence. See Hague Convention, art. 13(a). The respondent opposing the return of the child has the burden of establishing that the petitioner consented to or acquiesced in the removal or retention. 42 U.S.C. § 11603(e)(2)(B). A petition need not anticipate or overcome these defenses to survive a motion to dismiss. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (a complaint should not be dismissed for failing to anticipate affirmative defenses).

In this case, the Petition alleges that Pappalardo and S.G.N. left Australia to visit extended family in the United States and were to return on May 22, 2009. There is nothing in the Petition

alleging that Nicolson consented to or acquiesced in S.G.N.'s retention in the United States beyond this date.[1] Thus, dismissal of the Petition on the basis of consent or acquiescence is not appropriate. See Baxter v. Baxter, 423 F.3d 363, 371 (3d Cir. 2005) ("The fact that a petitioner initially allows children to travel, and knows their location and how to contact them, does not necessarily constitute consent to removal or retention under the Convention.").

### D. Effect of Maine District Court Custody Proceedings on Hague Convention Petition

Pappalardo argues that this Court lacks jurisdiction because Nicolson voluntarily participated in custody proceedings in the Maine District Court. Pappalardo contends that Maine is now S.G.N.'s "home state" under the Uniform Child Custody Jurisdiction and Enforcement Act and that the Final Order of Protection entered by the Maine District Court is determinative of Nicolson's Hague Convention Petition. Pappalardo argues that Nicolson cannot use his Hague Convention Petition to "circumvent" the Maine court's order on custody and the jurisdiction of the Maine courts. (Mot. of Erica Pappalardo to Dismiss Verified Petition for Return of Child (Docket # 13) at 9.)

Pappalardo's argument evinces a misunderstanding of the nature of a Hague Convention Petition. Custody litigation in state court revolves around findings regarding the best interest of the child, based on state domestic relations law. See, e.g., 19-A M.R.S.A. § 1653(3) ("The court, in making an award of parental rights . . . , shall apply the standard of the best interest of the child."). An adjudication of a Hague Convention Petition focuses on findings regarding the child's habitual residence and whether one parent wrongfully removed or retained the child. Hague Convention, art. 3. These are distinct determinations and the language of the Hague Convention and ICARA

---

[1] Having reviewed the motion papers and the parties' Trial Briefs, it is clear that the parties dispute a number of issues related to consent and acquiescence. The Court cannot resolve factual disputes in a motion to dismiss. The more appropriate forum for resolving these issues is the December 23, 2009 evidentiary hearing.

explicitly provides that these determinations do not need to be made by the same court. See 42 U.S.C. § 11601(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."). An aggrieved parent may pursue his rights under both the Hague Convention and state custody laws simultaneously. See 42 U.S.C. § 11603(h); Hague Convention arts. 18, 29 & 34. "The Hague Convention seeks to prevent an abducting parent from gaining any advantage in litigation by providing the left-behind parent with an expeditious avenue for seeking return of the abducted child *in addition* to those remedies available under the local laws of the country to which the child has been taken." Holder v. Holder, 305 F.3d 854, 860 (9th Cir. 2002) (emphasis in original).

The Convention was not intended to settle custody disputes; it is intended to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996). The Convention is based on the premise that the country where the child is a "habitual resident" is in the best position to decide on questions of access and custody. See Elisa Perez-Vera, Explanatory Report: Hague Conference on Private International Law, in 3 Acts and Documents of the Fourteenth Session (Child Abduction) 426, 434-35, ¶ 34 (1980). [2]

As the Ninth Circuit has held: "It would undermine the very scheme created by the Hague Convention and ICARA to hold that a Hague Convention claim is barred by a state court *custody* determination." Holder, 305 F.3d at 865 (emphasis in original); see also Silverman v. Silverman, 338 F.3d 886, 895 (8th Cir. 2003) ("[Respondent's] argument that a state court custody decision can somehow trump clearly granted federal court jurisdiction to decide and review issues of

---

[2] The Perez-Vera report is widely regarded as the authoritative source for interpreting the Convention and as the "official history" of the Convention. See Blondin v. Dubois, 189 F.3d 240, 246 n.5 (2d Cir. 1999).

8

congressionally adopted policy and procedure is simply untenable."). Therefore, the Maine District Court's custody orders have no bearing on Nicolson's Hague Convention Petition.[3] See Silverman, 338 F.3d at 892 ("[A] determination of 'home state' under the Minnesota statute is clearly not equivalent to a determination of 'habitual residence' under the Hague Convention.") Nicolson's failure to object to the Maine state court's custody order does not deprive this Court of jurisdiction over his Hague Convention Petition. See Holder, 305 F.3d at 866 ("The Hague Convention provides that children are not automatically removed from its protections by virtue of a judicial decision awarding custody to the alleged abductor.").

## IV. CONCLUSION

For the reasons stated above, the Court finds that the Petition sets forth adequate facts to invoke this Court's jurisdiction under the Hague Convention. Respondent Pappalardo's Motion to Dismiss (Docket # 13) is DENIED.

SO ORDERED.

    /s/ George Z. Singal  
    United States District Judge

Dated this 16th day of December, 2009.

---

[3] Because no party has said otherwise, the Court assumes that the issues related to the Hague Convention Petition (e.g., S.G.N.'s country of habitual residence and whether Nicolson was exercising his custody rights at the time of retention) were not raised in the state court custody proceeding. Had the parties previously raised the Hague Convention Petition issues in state court, the outcome might be different. See 42 U.S.C. § 11603(g) (a court must give full faith and credit "to the judgment of any other such court ordering or denying the return of the child, pursuant to the Convention"); Yang v. Tsui, 416 F.3d 199, 202-03 (3d Cir. 2005) (federal court may be required to abstain if Hague Convention claims had been previously raised during state court proceedings).